PEOPLE'S LIFE INSURANCE COMPANY *v.* BRITT.

Opinion delivered November 15, 1926.

1. APPEAL AND ERROR—REVIEW—DIRECTION OF VERDICT.—Where both parties moved for a directed verdict, the only question for decision is whether the testimony was sufficient to sustain the court's findings of fact, and whether the testimony was sufficient to sustain the court's action.

2. INSURANCE—QUESTION FOR JURY.—Evidence, in action on a life insurance policy, *held* sufficient to sustain findings that general agents of the insurer were authorized to accept notes for the first life insurance premium, and that the policy was not invalidated though the notes were never paid.

3. INSURANCE—PAYMENT OF PREMIUM—BURDEN OF PROOF.—Where the plaintiff in a suit on a policy of life insurance alleged that, at the time of insured's death, the premiums were paid, which defendant denied, the burden of proof was on the plaintiff.

4. INSURANCE—PAYMENT OF PREMIUM—SUFFICIENCY OF PROOF.— Plaintiff's burden of proof, in a suit on a life insurance policy, that the first year's premium was paid, was sufficiently met by proof of issuance of policy, of payment of part of the premium in cash by the insured, and of the execution of a note for the balance thereof as net premium to insurer's general agents.

5. INSURANCE—AUTHORITY OF GENERAL AGENTS.—General agents of life insurance companies are authorized generally to transact their business, collect premiums, accept notes to themselves in lieu of cash, and to bind the insurer thereby, and, when a note is accepted and cash payment waived by general agents, the insurer is bound, even though the general agents never pay it.

Appeal from Mississippi Circuit Court, Chickasawba District; *G. E. Keck,* Judge; affirmed.

*Little, Buck & Lasley,* for appellant.

*G. W. Barham,* for appellee.

WOOD, J.   This is an action by M. R. Britt, administrator of the estate of W. A. Carroll, against the People's Life Insurance Company to recover on a life insurance policy issued December 14, 1923, by the Century Life Insurance Company of Indianapolis, Indiana, insuring the life of W. A. Carroll in the sum of $2,000. The plaintiff set up the policy, and alleged that the assured died on July 13, 1924; that the defendant succeeded to the rights and liabilities of the Century Life Insurance

Company, and that the terms of the policy had been complied with on the part of the assured and the plaintiff. The defendant denied that it succeeded the Century Life Insurance Company, and denied that it was liable under the terms of the policy. It alleged that the policy had been forfeited and canceled for the nonpayment of the first premium. The facts which the testimony of the plaintiff tended to prove are substantially as follows:

W. A. Carroll died on July 13, 1924, and the plaintiff was duly appointed administrator of his estate. He held the life insurance policy in controversy issued by the Century Life Insurance Company of Indianapolis, Indiana, which company's business the defendant took over. Lester & Lester of Memphis, Tennessee, were general agents for the Century Life Insurance Company. T. C. Carroll was its local soliciting agent under them at Blytheville, Arkansas. The policy was issued December 14, 1923, sent to Lester & Lester, who, on December 21, 1923, inclosed the same to T. C. Carroll for delivery and settlement. They stated in their letter that the premium was $70.84, composed of a commission of $46.05 and "net" $24.79. The letter expressed the hope that the local agent would be able to get a settlement in cash of at least enough to cover the "net" to the company. The assured paid all in cash except $24.79, for which amount he executed his note payable to Lester & Lester at the First National Bank of Blytheville, Arkansas, with interest at the rate of six per cent. per annum from maturity until paid. The note was dated January 15, 1924, and was due April 4, 1924. The policy was delivered and was in the hands of the assured at the time of his death on July 13, 1924. Proof of death was made, and payment on the policy was refused. The policy was introduced in evidence, and it contained, among other provisions, the following:

"Payment of Premiums: All premiums are due and payable annually in advance at the home office of the company in the city of Indianapolis, Indiana, or to a designated collector, on or before date due, but, in any

case, only in exchange for the company's receipt therefor, signed by the president or secretary of the company and countersigned by such collector. Upon default in payment of any premium, or any note or interest thereon, whether such note be given for the first or subsequent premium, this policy shall be null and void and all premiums forfeited to the company, except as herein provided. After the first year, premiums may be paid in semi-annual or quarterly installments in advance at the company's rates therefor, but, except as herein provided, the payment of any premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

"Reinstatement: At any time after any default in premium payment, upon written application by the insured and presentation at the home office of evidence of insurability satisfactory to the company, this policy, unless previously surrendered for its cash value, may be reinstated upon the payment of arrears of premiums, with compound interest thereon at the rate of five per cent. per annum, and the payment or reinstatement of whatever indebtedness to the company existed hereon at the date of such default, with interest from that date."

"Policy in Force: No obligation is assumed by this company upon this policy until the first premium hereon has been actually paid during the lifetime and good health of the insured."

The local soliciting agent testified that it was the custom for him to deliver and collect the premium and make the settlement. He was to get as much money as possible and take a note for the balance, payable in sixty or ninety days, and that was done in this case. This witness further testified that he received the following letter from Lester & Lester, at Memphis, Tennessee:

"February 12, 1924.

"My dear Mr. Carroll:

"Hoped to hear from you with reference to the two policies that you promised you would either get the policy or the settlement on same. The company is demand-

ing either the policy or the money, and I had hoped that, when the weather got better, you would be able to get in touch with these parties and clean up the past due business. You remember, I accepted the notes of your brother's 'nets' in order to help you along. Now, Mr. Carroll, be candid with me, and if you feel that they will not be able to pay these notes, when they are due, I positively will not be able to advance the money to the company as they demand, unless I have the assurance that I will get the money back. The company has sent me your policy, and, owing to the condition of your account and you having gone with another company, I feel that you should send me the 'net' on your policy, and I will gladly forward same to you, or send me an indorsed note that I can handle. Your net amounts to $15. If you will send me a check for $15, or authorize me to draw on you for the amount, I will gladly forward the policy. Hoping to hear from you with some good news by return mail.         "Yours very truly,

                                "Lester & Lester,
                                "By E. C. Lester."

C. T. Tuck testified that he was the secretary and manager of the Century Life Insurance Company at the time the company issued the policy in controversy. Lester & Lester accepted the note of W. A. Carroll as evidence of the deferred part payment of the premium. No payment whatever was made to the company on this premium. Witness did not understand that the note was accepted as payment of the premium, but only as evidence of payment to be made in future. The company would expect the assured to pay the note if he wanted his policy to continue in force. The annual premium on this policy was not paid to the life insurance company or any one else for them. The witness was asked why the company issued and delivered the policy to Carroll without such payment having been made, and answered, "because, under the terms of the policy, the same was void if the first premium was not paid by the insured." This witness further stated that the policy had been

lapsed and canceled by nonpayment of the premium before the business was actually transferred to the defendant company. The policy was canceled in this way: the policy record was kept on card system. When a policy was canceled, the card was taken from the files of policies in force and placed in the file of cards of lapsed policies. The card for this policy was taken from our file and placed in canceled and lapsed policy files prior to April 4, 1924, and notice given by letter to the insured on that date to that effect, and urging the assured to reinstate the same. The policy in controversy was not taken over by the defendant, for the reason that it had forfeited for the nonpayment of the first premium and had been canceled by the Century Company on its books prior to the purchase of the assets of that company by the defendant company. There was in evidence a letter dated September 8, 1924, and addressed to W. A. Carroll, Blytheville, Arkansas, as follows:

"Dear sir:

"On August 28 I mailed you a letter with reference to a note given by you to Lester & Lester, insurance agents. Amount $24.79, with interest of 6 per cent. from January 15. No further indulgence will be given you in this matter, as you have not even shown us the courtesy of a reply to our courteous letter, and I will expect a remittance not later than five days from the date hereof.

"Yours truly,

"Universal Detective Bureau,

"By W. D. Carpenter."

There was also introduced in evidence a letter dated September 11, 1924, as follows:

"Memphis, Tennessee, September 11, 1924.
"People's Life Insurance Company,
Frankfort, Ind.

"Attention Mr. C. T. Tuck.

"Gentlemen: Yours of the 5th received, also copy of letter with reference to Wm. A. Carroll's policy. This man, W. A. Carroll, was written by T. C. Carroll, his

brother, and he mailed me a note for the net, $24.79, which was due April 1, 1924. T. C. Carroll failed in business at Blytheville, and, after writing his brother and several others, mailed me a batch of notes for the nets and skipped the country without paying anything.

"I am inclosing you the note which was mailed to this office, and I have been unable to get any satisfaction from W. A. Carroll or C. T. Carroll, his brother, that wrote it. I am confident that he never paid a cent to his brother. If he did, his brother has never paid a cent to this office. You remember, I returned T. C. Carroll his policy for cancellation.

"I hope there will be no liability on this policy, because it was certainly an outrage the way this fellow has acted. If there is any other information that I can get to evade the payment of this claim, I shall do my utmost in the matter. It might be well for you not to mention to the lawyer about this note, as it was only mailed to me after I had mailed the policy to him for delivery, collection and settlement, and immediately after receiving this note covering the net, as per his contract, he skipped the country. I see now where a bond is necessary on these agents, and I shall insist on a bond from every one from now on.

"Very truly yours,
"Lester & Lester,
"By E. C. Lester."

These letters were introduced by stipulation of the parties. to the effect that W. D. Carpenter and the Universal Detective Bureau were acting under the direction of Lester & Lester, insurance agents, and that the letter was written for the purpose of attempting to collect a note signed by Wm. A. Carroll; that the note was executed and delivered to Lester & Lester in part payment of an insurance premium growing out of and due on a policy of life insurance, the application for which was taken by Lester & Lester and the policy was issued on the life of Wm. A. Carroll; that W. A. Carroll mentioned in the letter of September 8 is the same as Wm.

Abner Carroll, the assured. C. T. Tuck testified that the note of the assured which witness sent to Lester & Lester was not returned to him, nor was a return of the policy demanded, because they could not locate the insured.

Upon the above testimony the plaintiff and the defendant each asked a directed verdict in their favor. The court thereupon discharged the jury, and the defendant asked the court to find certain facts and to make certain declarations of law and to enter a judgment in its favor. The court refused the defendant's motion, and, on its own motion, found the facts as follows:

"The court finds that the deceased died within one year after the issuance of the policy sued on. The court further finds that the present defendant has taken over the business of the Century Life Insurance Company, and is liable upon all policies that the other life insurance company would be liable upon. The court finds that the first year's premium in this case was paid unconditionally, and that the policy was in force for the term of one year, and was in force at the time of the death of the deceased. The court finds that there was nothing on or about the note given that would indicate that it was a part payment of the policy; that the note was given to and accepted by Lester & Lester, and was not given to or accepted by the company; that Lester & Lester and the soliciting agent had a right to take notes of this kind; that this note was not an obligation to the company, but was an obligation to Lester & Lester, and therefore the company had no right to cancel the policy, and their effort to do so could have no effect upon the same. The policy was in full force and effect at the date of the death of the deceased, and the plaintiff in this case is entitled to recover the amount sued for. The court further finds that M. R. Britt was, at the time of the institution of this suit, and at the time of the trial of same, the duly appointed and acting administrator of the estate of William Abner Carroll, deceased." And, on motion of the plaintiff, the court gave the fol-

lowing declaration of law: "Where general agents of a life insurance company are clothed with authority generally to transact the company's business in the State, and to collect premiums and to accept notes to themselves in lieu of cash, the company looking to them instead of the policyholder for the cash, they are authorized to bind the company by accepting notes in lieu of cash; and, when they accept a note and waive cash payment, the company is bound by the act of such general agents, whether these general agents ever pay the company or not." The court thereupon rendered a judgment in favor of the plaintiff, from which is this appeal.

The appellant and the appellee moved the court to take the case from the jury by each moving for a directed verdict in their favor. The only question therefore for decision is whether or not the testimony was sufficient to sustain the court's findings of fact, and whether, upon such findings, the court erred in its declaration of law. We are convinced that there was substantial testimony to sustain the court's findings of fact. It could serve no useful purpose as a precedent to comment upon the testimony in detail. It is set forth above, and speaks for itself.

The appellee alleged in his complaint that, at the time of the death of the assured, all premiums that were due upon said policy had been paid. The appellant denied this allegation. The burden of proof therefore was upon the appellee. Appellee has sufficiently met this burden by testimony showing that the policy was issued and delivered to the assured; that the assured paid part of the premium in cash and executed his note to Lester & Lester, general agents of the company issuing the policy, for the balance of the premium. It will be observed that the policy provides that "all premiums are due and payable annually in advance at the home office of the company." While there is a provision in the policy which would authorize the execution of a note in payment of the first premium, yet the testimony in the record was sufficient to warrant the trial court

in finding that the first premium due on this policy was
not paid by the assured's note to the company.  The
note itself, executed by the assured in part payment of
the premium on the policy, was in the name, not of the
company issuing the policy, but of the general agents
of the company, Lester & Lester.  The note was not
executed in the full amount of the first premium.  It was
taken in the exact amount of the "net" sum demanded
by the company as indicated by the letter of Lester &
Lester of December 21, 1923, to Carroll.  This letter
shows that the amount of premium was $70.84, and that
of this amount $46.05 went as commission to Lester &
Lester and the balance of $24.79 was the "net" to be
paid to the company.  The court was warranted in find-
ing that this sum, designated as "net" in the letter of
Lester & Lester, represented the amount of cash which
the company was to receive out of the first premium.
This letter of December 21, 1923, of Lester & Lester, taken
in connection with the letter of February 12, 1924, fully
warranted the court in finding that the company issued
the policy and that the same was delivered to the assured
with the understanding that he had paid the first year's
premium when he paid the amount of the general agent's
commission in cash and executed his note to the general
agents for the balance of such premium.  The court was
fully warranted in inferring from these letters that the
company was demanding the "net" (the amount for
which the note was executed) in cash.  Now, the note
itself which Lester & Lester had accepted in part pay-
ment of the premium was not due until April 1, 1924.
Therefore the company could not have been demanding
a payment of the note, but, as indicated by the letter of
February 12, the company was demanding a return of
the policy or the money.  This clearly shows that the
company had issued the policy and delivered the same,
expecting its agents, Lester & Lester, to pay in cash
the net sum due it out of the first premium, after deduct-
ing their commission.  In other words, the trial court
had the right to infer from these letters that Lester &

Lester, its general agents, had undertaken to collect the first premium and had themselves become responsible to the company for the payment of the first premium. If such was not the arrangement, why would the company be demanding of them the return of the policy or the payment of the net or cash before the note was due, which the appellant now claims was taken in part payment of the premium? Certainly, the above was the only legitimate inference to be drawn from the letters of the Century Company's general agents. The fact that the notes were executed in the name of the general agents and that they were attempting, long after the death of the assured, to collect these notes, as indicated by their letter of September 11, 1924, and their stipulation in the record, tends further to prove that the above was the arrangement between the general agents, Lester & Lester, and the Century Company. If such was not the arrangement, certainly it called for some explanation on the part of the appellant showing that such was not the arrangement between the Century Company and its general agents at the time the policy was issued and delivered to the assured. If such was not the arrangement, Lester & Lester knew that fact. They have not testified. There is no testimony on the part of the appellants to show that the note was not what it purported to be—an obligation to Lester & Lester. The court was warranted in finding that the note was not an obligation to the Century Company, but was an obligation to Lester & Lester, and that the first premium was paid. If the premium was paid, the company had no right to cancel the policy.

The court therefore correctly declared the law applicable to the facts which the testimony above set forth tended to prove. The case cannot be distinguished in principle on the facts from the case of *Mutual Life Insurance Company* v. *Abbey,* 76 Ark. 328, 88 S. W. 950, where we announced the law which the trial court followed in its declarations of law as above set forth. That case rules this.

The judgment is therefore correct, and it is affirmed.