COMMONWEALTH LIFE INSURANCE COMPANY v. TANNER.

Opinion delivered November 21, 1927.

1.  TRIAL—DIRECTED VERDICT.—Where both parties requested a peremptory instruction directing a verdict, without requesting other instructions, it was equivalent to an agreement that the question at issue might be decided by the court, and the court's decision had the same effect as the jury's verdict would have had.

2.  APPEAL AND ERROR—REQUEST FOR DIRECTED VERDICT.—Where both parties requested a directed verdict in their favor without asking any other instructions, the court was authorized to decide the issues, and its decision had the same effect as a jury's verdict, and will not be disturbed on appeal if supported by substantial evidence.

3.  INSURANCE—BREACH OF WARRANTY OF HEALTH.—In an action on a policy of life insurance, which did not require a medical examination of the insured, undisputed evidence of false warranties as to insured's health, made in the application and warranted to be true in the policy, held to require a directed verdict for defendant.

4.  INSURANCE—NOTICE OF BREACH OF WARRANTY.—The fact that the secretary of an insurance company was informed by one of the company's agents, who had seen insured about 6 weeks after the policy was issued, that insured appeared to be in bad health, held

not to estop the insurer from claiming that false warranties of health in the application for the policy invalidated it.

5.   INSURANCE—WAIVER OF BREACH OF WARRANTY.—Though one of the insurance company's agents informed the company after the policy had been issued that insured appeared to be in bad health, insurer *held* not to have waived its right to rely on the truth of warranties of health in the application for the policy.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; reversed.

*Joe H. Thompson* and *Utley & Hammond,* for appellant.

*R. W. Robins* and *George F. Hartje,* for appellee.

KIRBY, J.   Lenora Tanner, sister of Henry Simpson, the insured, brought this suit against the appellant insurance company to recover $500 alleged to be due her on the life insurance policy issued to her brother in which she was named as beneficiary.   She recovered judgment for the amount of the policy, penalty and attorney's fees, from which this appeal is prosecuted.

The company denied liability, alleging that the policy was issued without a medical examination and on the faith of the truth of certain representations as to the health of the insured, which were warranties, and false, avoiding the policy, and also that there was no liability under its terms because it was not delivered to the insured during his lifetime while he was in good health.

The policy was dated February 27, 1926, and Simpson died June 25, 1926.   Appellee made the application for the insurance for her brother, designating herself as beneficiary, and signing the name of her brother as applicant, by her.

The application contains the following question and answer:

"No. 3.   I have not at this time, nor have I had during the past two years, any disease or ailment of the brain, nervous system, blood vessel, lungs, stomach, liver, kidneys, gall bladder, intestines (bowels), heart or limbs except as follows:   Stomach trouble, September, 1925."

It was also stated that the applicant had not had during the two years immediately before, "diabetes, rheuma-

tism, scrofula, cancer, pellagra, malaria, typhoid fever, syphilis or gonorrhea, pneumonia, asthma, spitting of blood, tuberculosis, colitis, diarrhea, peritonitis, appendicitis, hemorrhoids, hernia, paralysis, general debility, influenza, or any other contagious or infectious disease.'' That each answer was unqualifiedly true; that all answers were complete, and agreed that the policy should not be in force and effect until and unless delivered to the applicant while he was alive and in good health.

The agent who took the application stated that, when the applicant, in answering question No. 3, said ''Stomach trouble, September, 1925,'' he asked ''Is he all right now?'' and she replied, ''Yes sir.'' This was not denied by the appellee.

The testimony showed that the insured had been away in Illinois; that he had been in continued poor health from September, 1925, to the time of his death, and was not in good health when the policy was turned over to his sister, who stated that he was only in fair health then. To the question, ''There wasn't anything wrong with your brother aside from that stated in the application, when the policy was delivered?'' she replied, ''No.''

The proof of death submitted by her showed that the cause of death was ''acute pneumonic phthisis,'' the contributory ailment ''chronic dyspepsia.'' The physician also stated that he had treated insured for chronic dyspepsia January 18, 1926, and acute pneumonic phthisis April 5, 1926.

The policy of insurance showed the application signed, ''Henry Simpson, by Lenora Tanner, applicant''; that they knew his insurability would be determined by the answers made, no medical examination being required; that all the answers or statements had been read to applicant and stated ''that each of such is unqualifiedly true—I therefore warrant that each answer and statement reflects an existing fact, and that the company may rely upon them to such extent. And further, for myself and all beneficiaries under the policy which may be issued upon this application, I agree that, in the

event any such answer may be discovered to be errone-
ous or false, or in the event any such statement be discov-
ered to be erroneous or false, even though such be deemed
immaterial by me or the beneficiary, then, in either
event, this policy shall stand canceled as of the date of
issuance, and this regardless of the date of discovery of
such breach.

"I further warrant that the statements and
answers above set forth are complete, and that I have
made no statement or answer touching upon any of the
above questions or statements, to any agent of the com-
pany, except as set forth above, and I hereby bind myself
and beneficiary to the truthfulness of this warranty, and
further, I agree that the policy to be issued on this appli-
cation shall not be in force or effect until and unless it
be delivered to me while I am in good health and alive.
* * * I understand and agree that provisions of this
application and the policy to be issued thereon can only
be waived or modified by indorsement written thereon
by the president or secretary of the company."

There was other testimony relative to the falsity of
the answers to the question whether applicant had ever
applied for insurance without getting a policy.

Each of the parties asked for an instructed verdict,
without asking for any other instructions, and the court
directed a verdict for the appellee, and from the judg-
ment thereon this appeal comes.

This court has uniformly held, since deciding *St. L.
S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643,
Ann. Cas. 1913C 1639, that, where each party asks
for a peremptory instruction directing a verdict in
his favor, without requesting any other instructions,
it is tantamount to an agreement that the ques-
tion at issue may be decided by the court, and the
court's decision has the same effect as the verdict
of a jury would have had, and will not be disturbed or
set aside on appeal if there is any substantial evidence
to support it. See also *Hall* v. *Harrel,* 136 Ark. 329, 206
S. W. 435; *National Benevolent Society* v. *Barker,* 155

Ark. 506, 244 S. W. 720; *Head* v. *Winship* (Ark.), 297 S. W. 841.

The evidence is virtually undisputed that the insured had suffered from chronic dyspepsia from September, 1925, before the policy of insurance was issued in February, 1926; that he had been treated for this ailment in January before the issuance of it, as stated by the physician, who certified to the proof of death; that he was suffering from it when the application for insurance was made, and was not in good health on account of it when the policy was delivered, as stated by the beneficiary, and was frail, thin and emaciated, vomiting his food and spitting up blood from the time he returned from Illinois in January, and unable to do any substantial work to the time of his death.

The physician stated that acute pneumonic phthisis is an acute type of tuberculosis that makes rapid destruction of the lung tissues, usually terminating in death in between three and four months.

Another physician, Dr. Benefield, stated that acute gastritis and chronic dyspepsia are an indication of tuberculosis, and are sometimes a sure and the only symptoms of that disease.

The warranties as to the health and physical condition of the insured, both at the time of the application for the insurance, and certainly at the time of the delivery of the policy, were false, relieving the insurance company from any liability under the policy on that account, in accordance with its terms. The testimony is not sufficient to support the verdict, and the court erred in not instructing a verdict in its behalf.

Neither was there any estoppel of the company or waiver of its right to rely upon the truth of the warranties, because of the statement to its agent that he had seen the insured about six weeks after the policy was issued and told the secretary of the company of the insured's apparent bad health. No premiums were due or accepted on this policy thereafter. This constituted no knowledge of existing facts at the time of the issu

ance and delivery of the policy which would have invalidated the contract from its inception, and it cannot be said that the policy of insurance was issued and delivered with full knowledge of all the facts affecting its validity, or constituted known grounds of invalidity amounting to waiver of the conditions in the contract inconsistent with such facts.

For the errors designated the judgment is reversed, and the cause dismissed.