RIGGS et al. v. FIRST. NAT. BANK OF KOSSE. (No. 875.)

Court of Civil Appeals of Texas. Waco. Dec. 19, 1929.

Rehearing Denied Jan. 30, 1930.

Rogers & Rogers, of Marlin, for appellants. Higgins & Glass, of Marlin, for appellee.

STANFORD, J. This suit was instituted by appellant Lizzie Riggs, joined by her husband, John Riggs, against appellee, to set aside and annul a deed of trust lien upon 53 acres of land in Falls county, Texas, upon the

ground that said land was her separate property, and also the homestead of herself and family, at the time of the execution and delivery of said deed of trust; and that the debt evidenced by the notes and sought to be secured by said deed of trust was a pre-existing debt due by her husband. The facts and the pleadings, where necessary, will be set out in our disposition of appellants' assignments.

After this suit was filed, the First National Bank of Kosse, the defendant therein, became insolvent, and all of its assets, including the notes and deed of trust herein involved, were taken over by and became the property of the Kosse National Bank, so said last-named bank was made defendant in lieu of the First National Bank of Kosse.

After appellants, plaintiffs in the trial court offered their evidence in chief, upon request of appellee, the court instructed a verdict for appellee, upon which verdict so instructed the court entered judgment for appellee. Appellants have duly appealed and present the record here for review.

Under their first proposition appellants contend, in effect, that the land involved herein was their homestead, and that their homestead right in said land was not lost or abandoned on account of the family's moving off of same and remaining away for several years on account of the wife's health; and this is true, although appellants made an effort to sell same for the purpose of buying another home. Appellee in its first counterproposition, contends, in effect, that the property in question never became the homestead of appellants prior to their removal therefrom, and, as said property was never impressed with the homestead character in favor of appellants by reason of their residence upon it, the question of abandonment does not arise. The record shows that this case was tried about March 27, 1929; that Tom Crabb and his wife, Mary Crabb, owned two tracts of land in Falls county, one tract of 91 acres, on which their residence was located, and another tract of 53 acres, about one-fourth mile away from the 91 acres; that Tom Crabb and Mary Crabb had three children, Addie, now the wife of W. B. Moore, Lizzie, now the wife of John Riggs, and Sam Crabb; that Tom Crabb, the father, died about 14 years ago; that Mary Crabb, who is now 78 years of age, after the death of her husband, Tom Crabb, continued to occupy the 91 acres until about 4 years ago, when she went to live with her daughter, Mrs. Addie Moore, near Glade Chapel, in Falls county, Texas. Mrs. Addie Moore, among other things testified:

"Yes, sir; there was an agreement made between all the parties that certain ones had certain lands; there was an understanding between me and Sam, my mother, and my father, as to which tract of land out of the property each child would have, and especially with reference to the land of Lizzie Riggs."

The record shows Lizzie Riggs and John Riggs have been married and have lived together about 21 years, and have six children, their ages ranging from 5 to 20 years. Mrs. Addie Moore testified further:

"They never did own any land, except this land in controversy, she nor her husband; from the time John Riggs and Lizzie Riggs married, since their marriage, they have been living on the place that she owns. Now, I can't be positive about the first two or three years they were married, but since that time, it was her own land; her daddy gave it to her."

The record shows further that on January 10, 1927, Lizzie Riggs and husband, John Riggs, Addie Moore and husband, W. B. Moore, S. J. Crabb and wife, Mattie Crabb, and Mary Crabb, conveyed by warranty deed the 53 acres in controversy to J. C. Ray for a cash consideration and five vendor lien notes, all payable to the order of Lizzie Riggs and John Riggs. All the cash consideration was received by Lizzie Riggs and John Riggs. This deed recites the 53 acres conveyed was the entire interest of Lizzie Riggs in the Tom Crabb estate. On the 10th day of January, 1928, the said J. C. Ray, in consideration of the cancellation and surrender of said notes by Riggs, reconveyed said property to Lizzie Riggs and John Riggs. Appellant Lizzie Riggs testified, in substance, that she and her family occupied the 53 acres in controversy as their home for several years; that she never was absent from said place, only the time when they moved to Bremond for her health about 3 years ago; that she never told the bank, or any one else, that the 53 acres was not her homestead or that they owned other land; that at the time she sold the 53 acres to J. C. Ray she intended to buy a little home in Bremond, so she could try to regain her health; that she had lung trouble, stomach trouble, and appendicitis; that she had been sick for 13 years; that her health was the cause of her moving away; that she was taking electric treatment from a doctor at Bremond, and got too weak to make the trips; that her intention was to go back (to the 53-acre home) as soon as her health was better; that the fact her health had not improved had nothing to do with her intention to return to her home place; that she intended to go back, if her health ever improved so she could; that no one was living upon the land at the time she executed the deed of trust; she was holding it vacant to go back to it herself; that the real condition of her health at this time (November, 1928) was bad; she was not able to attend court. She testified by deposition.

The record shows further that the 53-acre home of appellants was about eleven miles from Bremond, and Dr. Brittain, who resided at Bremond, was treating her, and it cost appellants $10 a trip for treatments out at their home, so they moved to Bremond and lived in

and around Bremond, in order to be near her physician and to reduce the expense of treatments. Appellant John Riggs testified that he and Lizzie Riggs were married September 1, 1907, and that they moved on the land in controversy the year after they were married. This witness testified as follows:

"As to what right I had to move on that place, will say they just wanted us to have the place. * * * We moved [to Bremond] of course on account of my wife's bad health. She was under treatment of Dr. Brittain at Bremond, and it cost so much, $10 a trip, and he had to come pretty often. She has been under treatment all that time. Her trouble is T. B. and appendicitis. She has hemorrhages every week. What our intention is with reference to moving back to that place, will say * * * I do what she wants, and she wants to go home. Every day she wants to go back, but her health is so one day she wants to go, but next, she can't, and she backs down. She has yearned to go back; she cries to go back."

On June 29, 1928, appellants executed a deed of trust on said 53 acres of land to the First National Bank of Kosse to secure the payment of four notes, for $250 each, to said bank. These notes were given, not for borrowed money, but in settlement of a pre-existing indebtedness, as evidenced by two judgments against appellants and others.

■ As above stated, this case was tried March 27, 1929. At the time of trial the evidence shows Tom Crabb had been dead 14 years, so he must have died about 1915. The evidence shows further that appellants were married September 1, 1907, and that they moved onto the 53 acres in controversy and began to occupy same as their home a year after their marriage, or in 1908, and some 7 years before the death of Tom Crabb, the father. The evidence of Addie Moore is clear and uncontroverted that there was an agreement between herself, her brother, Sam, her father and mother, and Lizzie Riggs as to which tract of land each child should have. There was about 150 acres owned by Tom and Mary Crabb. There were three children. The 53 acres in controversy was separated from the remainder, being about one-fourth of a mile away. This same witness testified further, in connection with the time appellants moved upon the 53 acres: "But since that time it was her own land, her daddy gave it to her."

The inference is clear from the evidence that, about the time appellants moved onto said land, there was an agreement among all the parties interested, by the terms of which Lizzie Riggs should become the present owner of said 53 acres as her share of the estate of her father and mother. It was in the nature of an advancement, made with the consent and acquiescence of both parents and the other two children. This is corroborated by the fact that appellants moved onto said land, and claimed in their own right and occupied same as their own for about 18 years, until they moved to Bremond to afford the wife medical treatment. There is no evidence that any one ever contended that appellants' occupancy was otherwise than as owners. Of course, they had no deed to said land, and when they sold to J. C. Ray, to buy another home in Bremond, in order to show a good record title it was necessary for the surviving widow and other children to join. But this deed recites: "It is understood that this 53 acres is Lizzie Riggs' entire interest in the Tom Crabb estate."

The consideration for the conveyance was received by appellants, and a year later Ray reconveyed said property to appellants, in consideration of the surrender and cancellation of the vendor's lien notes he had given them. These facts are corroborative of the original verbal agreement, to which reference is made above. We think appellants having taken possession of the 53 acres by virtue of the oral agreement between all parties at interest upon sufficient consideration, and having occupied said land under claim of right as owners, using and enjoying same as their home for some 18 years, before they moved to Bremond, was sufficient to impress said property as their homestead. American National Bank of Austin v. Cruger, 31 Tex. Civ. App. 17, 71 S. W. 784 (writ refused); Birdwell v. Burleson et al., 31 Tex. Civ. App. 31, 72 S. W. 446 (writ refused); Hutchenrider et al. v. Smith (Tex. Com. App.) 242 S. W. 204.

■ If the oral agreement between all the parties at interest, including the father, Tom Crabb, to the effect that the 53 acres should belong to Lizzie Riggs, together with the fact that, on or about the date of said agreement, appellants took possession of said land, and occupied and claimed same as their home for some 18 years, did not show a sufficient title or right upon which to base a homestead exemption, then, we think, the following facts would constitute such title: It is undoubtedly true that on the death of Tom Crabb, about 1915, appellant Lizzie Riggs inherited a one-third interest of her father's one-half interest, or a one-sixth interest in the 150 acres, and so from said date owned title in fee simple to said one-sixth interest, and at said time was occupying as owner and as her home said 53 acres, to which her mother, Mary Crabb, had by said oral agreement waived her life estate, and appellants continued to occupy said property as their home under this state of facts after the death of Tom Crabb for 10 or 11 years prior to their removal to Bremond. Tucker v. Dodson (Tex. Civ. App.) 245 S. W. 728.

■ The evidence being sufficient to show, or at least to make an issue of fact as to

whether the 53 acres in controversy was the homestead of appellants at the time of their removal to Bremond, and the remaining questions, such as abandonment, estoppel, etc., being questions of fact for the determination of the jury, the trial court erred in instructing a verdict for appellee.

The cause is reversed and remanded.