FEDERAL LIFE INSURANCE COMPANY *v.* HASE.

4-4555

Opinion delivered March 15, 1937.

*Carmichael & Hendricks,* for appellant.
*Floyd Terral,* for appellee.

GRIFFIN SMITH, C. J.   On November 11, 1935, appellant delivered its policy of insurance for $1,500 on the life of B. Arthur Hase.   M. Helene Hase, wife of the insured, was beneficiary.   The insured died January 26, 1936, and payment was refused on the ground that fraud had been practiced in procuring the policy.   There was a jury verdict for the face value of the contract, with interest, on which the court gave judgment, adding the statutory penalty of twelve per cent. and an attorney's fee of $250.

Appellant's answer was a general denial, coupled with an allegation that false answers were given to questions concerning the applicant's physical condition and history; that such answers were known to the applicant to be untrue; that they were made for the purpose of deceiving appellant, and that appellant was deceived, to its injury.

To reverse the judgment appellant contends (1) that the court erred in holding that the burden of proof was

upon appellee; (2) that it was prejudicial error for the court to permit appellee to show cancellation of other policies; (3) that answers in the application should have been treated as warranties; (4) that it was error to deny appellant the right to submit to the jury whether the policy was delivered and the premium paid while the insured was in good health; and (5) that the fee allowed appellee's attorney is excessive.

In his opening statement appellant's attorney admitted issuance of the policy and death of the insured, but affirmatively pleaded, by way of defense, that the premium had not been paid in time. Appellee, in her complaint, made three allegations—issuance of the policy, payment of the premium, and death of the insured.

The general denials in appellant's answer traversed appellee's allegation that the premium had been paid, but the qualified admission of payment was not sufficient to relieve appellee from making proof. Therefore, the burden was not shifted.

In *Eminent Household of Columbian Woodmen* v. *Howle,* 131 Ark. 299, 301, 198 S. W. 286, defendant admitted the policy and that Howle died while a member in good standing. Liability was denied solely upon the ground that provisions of the policy had been violated. It was held that the burden was upon the insurance company to show forfeiture. Admissions of the defendant were made at the opening of the trial, and this court held that the pleadings should have been treated as amended.

The situation here, however, is quite different, and requires application of the general rule that the plaintiff has a right to open and close "whenever it devolves upon him to prove any issue in the case." *Mine La Motte Lead & Smelting Co.* v. *Consolidated Anthracite Coal Co.,* 85 Ark. 123, 107 S. W. 174. "The burden of proof was upon appellee to show that the premiums had been paid as alleged, defendant having denied the facts of its payment." *National Benefit Life Insurance Co.* v. *Hickman,* 182 Ark. 1186, 1187, 33 S. W. (2d) 362. "The appellee alleged in his complaint that, at the time of the death of the assured, all premiums that were due upon said policy

had been paid. The appellant denied this allegation. The burden of proof therefore was upon the appellee." *Peoples Life Insurance Co.* v. *Britt,* 172 Ark. 98, 287 S. W. 758. "Of course, due payment of the premium might have been made without receiving a receipt, but the burden of proof would be on the party claiming said insurance to show that it had been paid, when disputed." *Gordon* v. *New York Life Insurance Co.,* 187 Ark. 515, 60 S. W. (2d) 907. Other cases to the same effect might be cited.

Payment of the premium of $74.18 in advance was, by the terms of the policy, made a condition precedent to its validity. When the defendant admitted issuance and delivery of the policy, there was a presumption that the premium had been paid, or that credit had been extended. Denial of timely payment was not coupled with an allegation that the insured fraudulently procured premature delivery of the policy without payment of the premium.

Was appellant prejudiced when the court permitted appellee to show cancellation of other policies? H. Jewel Cameron was appellant's agent and had known appellee and her husband for many years. As far back as 1914 he wrote a policy for Hase. He had seen Hase often during the three years preceding his death, was frequently in the Hase home, and knew that Hase had other policies. Cameron was asked whether he advised consolidation of the policies, and to this question a general objection was interposed and overruled. Cameron testified: "Each time Mr. Hase bought these contracts he had me O. K. them for him before he would take them, and each time we talked about the possibility of writing Federal Life Insurance and we tried to open the case from time to time and it was bought with the understanding if he was ever able to get a good Federal contract— a larger contract—he would let it go. That is the reason he bought it." Policies identified by the witness were: National Life, $450; Life & Casualty, $250; Metropolitan, $758; total, $1,458. Witness further testified that Hase bought the smaller policies "to tide him over until the

larger policy was issued;" that he was a friend of the family, and told them the $1,500 policy was in force from day to day.

This testimony is sufficent to show that appellant's agent and the insured were personal friends, and that the insured consulted the agent and relied upon him for advice with respect to insurance. These were circumstances tending to show that the agent, as a reasonable man, should have known something about the insured's physical condition, his habits, and his insurability. For these reasons, it was not error to admit testimony showing cancellation of the policies.

It is contended that answers of the insured to questions in the application were not full, true, and complete.

Question No. 17: "Have you any ailment, disease, or disorder?" Question No. 24: "Have you ever had disease of the heart or kidney, rheumatism, ulcer of the stomach or duodenum, diabetes, gall stones or disease of the gall bladder? If so, state details." The answer to each question was "No."

Dr. Sterling Bond, for appellant, testified that he operated upon the insured in January, 1936, for a rupture. The patient, whom witness had never known before, was admitted January 19, was operated on January 20 for ruptured ulcer, and died January 26. History: "Patient states he has been troubled with stomach trouble for many years and usually got relief by taking soda. Last night about eight o'clock he had severe pains in the stomach and became black in the face and stomach became firm and hard and was unable to take (word apparently omitted) and vomit. Soda is a very common home remedy and people can take it when they have a little indigestion and get relief when there is nothing seriously wrong; it is taken for many things when there are no signs of ulcers. I would not say that on October 20 insured had ulcer. I could not tell it was an ulcer until X-ray pictures were made on morning of January 20, and do not know how long the ulcer had been present." On cross-examination, witness said: "I happen to know I don't have ulcers, and I take soda occasion-

ally. Soda is part of the treatment for ulcers, but people take it for any number of conditions." Question: "You say you know you haven't got ulcer. You wouldn't put it in this language: 'I have been troubled with stomach trouble for many years'—you wouldn't put it in that shape?" Answer: "As a layman I might. I don't think I would."

Frank J. Iseman, an officer of the Karcher Candy Company, testified that Hase had long been employed by the firm as stock man and elevator man, and that he made minor repairs on trucks and automobiles. Witness identified a letter (undated) he had written appellant, saying the insured "was off in November, 1935, about a week." He returned to work shortly after December 1, at which time he became ill and did not return until December 27 or 28, and from then on he worked until January 18. There was no record of deductions from wages.

It is argued in appellant's brief that in this letter Iseman wrote that Hase was off duty "early in November about a week." The transcript does not contain the word "early," as relating to the time insured was off duty in November, and this statement seems to have been brought into the abstract through error, and was repeated by appellee's attorney. Iseman did not remember having written the letter and did not know when the insured was absent. He would not say what part of November the absence occurred. Question: "If he was off only a week and returned to work shortly after December 1, then it would have to be the last part of November, wouldn't it?" Answer: "Yes."

Dr. W. C. Green had attended Hase. He was first called November 12, 1935. Patient seemed to be suffering with acute indigestion, also known as gastritis. Thinks visit was late in the afternoon. Remedies were prescribed, and patient was seen again on the 14th, at doctor's office. Patient visited witness three times in November, and possibly once late in December. Witness does not know what caused death. "Gastritis, which is inflammation of the stomach, might set up in an hour's

time or even less, and it might be caused from eating too much food, or food that would not agree with the person, something that would ferment in the stomach, some irritating substance.''

Henry G. Leiser, president of Karcher Candy Company, testified that Hase worked regularly, except that occasionally he was off on account of a back injury. Early in December he was sick and off duty. Would not say he was not off in November. ''It was some time in November he told me he lifted something in the basement and his back was troubling him and he thought he would be off for a few days.''

Archie Chaple, employee of Karcher Company, saw Hase several times a day, and he worked regularly. Hase was off two or three days, perhaps a week, the latter part of November when troubled with his back. ''He never complained to me about his stomach. He appeared to be a man of good health, except for his back.''

Mrs. Helene Hase, appellee, testified that her husband's back was injured, she thought, in 1926; that the miscellaneous policies of insurance referred to by Cameron were dropped ''because we took another one out— a bigger one.'' She further testified that her husband had not had a doctor between the time his back was hurt and the time he was attended by Dr. Green; that he had experienced no serious illness in the meantime; that she did not know he had stomach ulcers; that Dr. Green was called on the night of November 12; that Hase went to see Dr. Green a few days later; that he worked the day before he went to see Dr. Green again; that the doctor did not tell Hase he had ulcers; that ''before he took sick in December he was always in good health, except for the back injury;'' that he was off duty in November for a short time because of his back, but was in good health all through November ''except the temporary trouble he had that night.'' The insured took soda once in a while for sick stomach, and went to Dr. Green to ascertain if something was wrong with him. He was off from work in November ''maybe just a day or two.'' Would not say what part of the month this was.

The policy was delivered under the insured's representations in the application that he was free from ailments, disease, or disorders, and that he had never had the diseases mentioned in question 24. He agreed that each answer was full, true, and complete in every respect, and that they were offered to appellant as a consideration for the policy of insurance.

On November 11 Hase paid Cameron $5.20; and, quoting Cameron, "a few days later he paid me $14.75 and then a small amount after that. The full amount was paid some time between the delivery of policy and the 7th of December. No part of the compensation went to the company until the 7th of December, which was in the thirty days' grace. I did not know that at the time the payment of $14.75 was made, Mr. Hase had consulted Dr. Green, and did not know he was suffering from a severe case of gastritis." Cameron also stated that when the policy was delivered and the payment of $5.20 made, he personally extended credit to the insured on the balance.

The agent, Cameron, clothed with authority to solicit business, take applications, and deliver policies, will be presumed to have had authority to collect the first premium. The policy provides that all premiums, after the first, are payable at the home office, or to persons duly authorized to receive them. It is not contended that there was a lack of such authority, and in the absence of a denial of his right to receive the first premium in installments during the thirty days of grace, it will also be presumed that the agent was acting for his principal in the method adopted for making these collections.

Cooley's Briefs on Insurance, vol. 1 (2d ed.), at pages 706 to 713, state the following rule: "Payment of the first premium to an authorized agent of an insurer intrusted with delivery of the policy is sufficient to bind the latter. If payment of the first premium is made to an agent of the company, the fact that the premium is not forwarded by the agent until after loss will not release the company. Likewise an insurance company will be bound if the first premium is paid to its agent, though

he never remits it to the company, but, instead, converts the money to his own use. So, if a policy is delivered without the payment of the premium, the insurer must be held to have extended credit for such.''

In *National Life & Accident Insurance Co.* v. *Threlkeld,* 189 Ark. 165, 70 S. W. (2d) 851, it was said that ''A misrepresentation will not avoid the policy unless wilfully or knowingly made with intent to deceive.'' Citing *Wilbon* v. *Washington Fidelity National Insurance Co.,* 182 Ark. 57, 29 S. W. (2d) 680; *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101, 150 S. W. 393. See also *New York Life Insurance Co.* v. *Parker,* 188 Ark. 39, 64 S. W. (2d) 556.

There is no direct evidence that Hase knew he had any ''ailment, disease or disorder,'' of a kind to impair his health and affect his insurability. The Century Dictionary defines ''ailment'' as ''disease; indisposition; morbid affection of the body; not ordinarily applied to acute diseases.'' The words ''disease or disorder,'' preceded by the word ''ailment'' in appellant's printed form, with a comma following ''ailment,'' would indicate that ''disease or disorder'' should be understood in the same sense as ''ailment;'' and, if so, then the converse would be true.

Evidence as to the insured's lack of information as to the diseases enumerated in question 24 is more convincing. Answers are not made warranties, and the insured was not required to enlarge upon the interrogatories, nor to interpret them in any sense other than that which the language employed and the circumstance of the inquiry suggested as being responsive.

This case calls for application of other rules laid down by Cooley which declare that ''knowledge of the applicant is a determining factor in considering the truth or falsity of answers, where such answers are not made warranties; that a mere layman cannot be presumed to know the existence of a disease which a physician cannot discover, or about which physicians differ in opinion, and that a statement that the applicant is in good health, or in sound health, does not necessarily mean perfect health

or absolute freedom from every slight or temporary derangement of the functions of the organs. If the applicant is free from apparent sensible disease, and unconscious of any derangement of important organic functions, he may truthfully say that he is in good health, though he may have some slight or temporary indisposition.''

Finally, it is objected that the fee of ·$250 allowed appellee's attorney is excessive. The amount recovered, with interest and penalty, was $1,700.50, and the fee is a little less than 15 per cent. In *Metropolitan Casualty Insurance Company* v. *Chambers,* 136 Ark. 84, 206 S. W. 64, it was held that in a hotly-contested case resulting in recovery of $4,500 on an accident policy, allowance of $750 as attorney's fee was not an abuse of discretion. This would be 16.66 per cent. In *Ætna Life Insurance Co.* v. *Taylor,* 128 Ark. 155, 193 S. W. 540, Ann. Cas. 1918B, 1122, a fee of $1,000 on an $8,000 recovery, or 12½ per cent., was held not excessive. A fee of $500 allowed on a recovery of $2,000 was held excessive and reduced to $300, or 15 per cent., in *Missouri State Life Insurance Co.* v. *Fodrea,* 185 Ark. 155, 49 S. W. (2d) 638. In other cases allowances have been reduced substantially below 12½ per cent. There seems to be no fixed policy in considering such fees, other than that discretion must not be abused. In this case, although the allowance is substantial when compared to the amount of recovery, we cannot say, as a matter of law, that it was unreasonable.

Affirmed.