AETNA LIFE INSURANCE COMPANY *v.* TAYLOR.

Opinion delivered March 19, 1917.

1. REVIVOR—CONSENT OF DEFENDANT.—When a plaintiff dies a revivor may be made in the name of his representatives forthwith, whether the defendant consents to it or not.

2. ACCIDENT INSURANCE—PLEA OF SUICIDE—BURDEN OF PROOF.—Deceased, who carried an accident policy in appellant company, was discovered dead, shot through the head, and with a pistol in his hand; *held*, under the policy, the burden was on the plaintiff (in an action to recover under the policy) to prove that the death of the insured resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means; but plaintiff is not required to prove that the death of the insured did not result from suicide, which by the terms of the policy, would relieve the appellant from liability.

3. ACCIDENT INSURANCE—SUICIDE—PRESUMPTION.—Where one is found dead, there exists a presumption that deceased did not commit suicide, and such presumption stands until overthrown by evidence.

4. ACCIDENT INSURANCE—DEATH—PRIMA FACIE SHOWING.—Under proof that the insured was found dead with a pistol wound through his head, and that that caused his death, a *prima facie* case of liability is made out on a policy insuring deceased from death from accidental means.

5. ACCIDENT INSURANCE—PLEA OF SUICIDE—BURDEN OF PROOF.—In an action on an accident policy, where the defendant plead that deceased had committed suicide, the burden is upon the defendant to prove that fact, where under the terms of the policy, suicide is a defense to the policy.

6. ATTORNEYS FEES—ACTION TO COLLECT ON ACCIDENT POLICY.—In an action on a policy of accident insurance, a verdict for $8,000 was rendered for the plaintiff. *Held*, an allowance of $1,000 attorney's fees to the plaintiff was proper.

Appeal from Jefferson Circuit Court; *W. B. Sorrells*, Judge; affirmed.

*M. Danaher* and *Palmer Danaher*, for appellant.

1. The case should not have been revived. Kirby's Digest, §§ 6303 to 6306. It was improperly revived. No order was served on defendant.

2. It was error to give the second instruction for plaintiff. The burden of proving suicide was not on defendant. 55 N. E. 540; 182 Ill. 496; 4 Cooley on Insurance, 3258.

3. The attorney's fee is excessive.

*Gustin, Gillette & Brayton* and *Taylor, Jones & Taylor,* for appellee.

1. The suit was properly revived. Kirby's Digest, §§ 6603 to 6307, 6314, 6317; 76 Ark. 122.

2. The burden was on appellant to prove suicide. 80 Ark. 190; 95 *Id.* 456; 113 *Id.* 502. There is no error in the giving or refusal of instructions. 78 Ark. 241; 84 *Id.* 81; 92 *Id.* 472; 93 *Id.* 509; 96 *Id.* 184.

3. The attorney's fee is not excessive.

*M. Danaher* and *Palmer Danaher,* for appellant, in reply.

Where a policy insures against bodily injuries effected solely through external, violent and accidental means (suicide, sane or insane, not included), the burden of proof rests upon plaintiff * * * to prove that the death occurred through accidental means, and the fact that defendant pleaded suicide does not alter the rule. 73 Mo. App. 38; 147 Pac. 1175; 1 Corpus Juris, 496; § 284; 4 Cooley's Briefs on Insurance, 2358; 240 Ill. 205; 175 Ill. App. 511; 215 Mass. 32; 149 N. Y. 45; 28 N. Y. Sup. 951; 209 Pa. 632; 169 Mo. 272; 82 N. W. 326.

### STATEMENT BY THE COURT.

This is an action by an administrator to recover on a policy of accident insurance.

The plaintiff alleges that the Aetna Life Insurance Company insured Edgar P. Sears in the sum of $5,000 against death resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means. That the policy itself and the accumulations from renewals amounted to $8,000, and that Ella S. Sears, the wife of the insured, was the beneficiary.

That on the evening of November 25, 1914, during the life of the policy, Edgar P. Sears received a pistol wound in the head at the hands of an unknown person which resulted in his immediate death.

In its answer, defendant denied that the death of the insured was accidental within the meaning of the policy. It avers that by the terms of the policy it did not agree to insure Sears against death resulting from his own intentional act. The answer further alleges that Sears committed suicide by shooting himself, and that no person other than himself was responsible in any manner for his death. The material facts are as follows:

Edgar P. Sears had carried an accident policy with the defendant company for sixteen years prior to his death. The policy which was in force at the time of his death insured him against disability or death resulting, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, suicide (sane or insane) not included. The policy was for $5,000 and contained a clause for an increase of the amount of the policy by consecutive renewals until the accumulations should amount to 50 per cent. of the principal sum.

The insured was found dead in the city of Pine Bluff on the morning of the 26th of November, 1914. His death was the result of a gunshot wound through his head, which, the physicians who examined his body testified, caused immediate death. The bullet went into his head about an inch in front and above the right eye and came out about one inch and a half above and behind the left ear. There were no powder marks or burns of any nature on his body; his flesh was not charred, nor was his hair singed. Sears was a good sized man, weighing about two hundred pounds. His body was found near a cotton platform and a folding pocketbook with some of his papers in it was lying on a bale of cotton on the platform. He was lying on his back with one leg straight out and the other drawn up. His left arm was lying down by his side

and his right arm was lying over his breast with his hand on a .38 caliber pistol. The pistol had been fired twice. The ground was dusty and there was no evidence of a struggle or even of any other tracks around there.

It was also shown by the defendant that the insured had formerly been a man of means and had always made a good deal of money until about a year before his death, when misfortune overtook him. The defendant's evidence also tended to show that the insured was making very little money just prior to his death and had been unable to even pay his board; that he was drinking heavily and was very much depressed. Other circumstances tending to show death by his own hand were adduced in evidence.

The testimony on the part of the plaintiff tended to show that the deceased had not been drinking heavily prior to his death; that he was in good spirits and had sent his wife a small amount of money, writing a cheerful letter.

The jury returned a verdict for the plaintiff, and the defendant has appealed.

HART, J., (after stating the facts). This action was commenced by Ella S. Sears, the beneficiary named in the policy. During the pendency of the action and before the case was tried she died and the suit was revived in the name of Dan Taylor, as special administrator of her estate. This was done over the objection of the defendant. The motion to revive was accompanied by the affidavit of three persons showing that Ella S. Sears had died at Salt Lake City, Utah, and that no administration upon her estate had been had. There was no error in the action of the court in this regard.

In *Anglin* v. *Cravens,* 76 Ark. 122, the court said: "When the plaintiff dies during the pendency of the action, any person interested in the further prosecution thereof may have a revivor in the name of the administrator or executor, if there be such, and the right of action be

one that survives in favor of the personal representative; and if there be no general administrator or executor, the revivor shall be in the name of a special administrator appointed by the court in which the action is pending. The order to revive may be made forthwith—as soon as the court in which the action is pending convenes after the death of the plaintiff, and must be made within one year after that time, except by consent of parties. The limitation of time in the statute applies equally where there is no general administrator or executor as where there is one, because in such event the persons interested may have a revivor in the name of a special administrator.''

(1)  Again, in *Keffer* v. *Stuart*, 127 Ark. 498, the court held that under our statute when a plaintiff dies the revivor may be made in the name of his representatives forthwith, whether the defendant consents to it or not. The court further said that the statute does not require that the defendant be consulted until after the expiration of a year from the time when the order of the revivor might have been first made, but that after that time, the order of revivor could not be made without the consent of the defendant.

The court also gave at the request of the plaintiff, among others, the following instructions:

''1.  If you believe from the evidence that the deceased came to his death as the result of a pistol shot fired by some person other than himself, your verdict will be for plaintiff.

''2.  The burden is upon the defendant insurance company to establish by a preponderance of the evidence that the deceased committed suicide, and unless you so find, your verdict will be for the plaintiff.''

It is insisted that the court erred in giving instruction No. 2.

(2)  The burden was on the plaintiff to establish that the death of the insured resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental

means; but he was not required to prove that the death of the insured did not result from suicide, which by the terms of the policy would relieve the company from liability thereunder.

(3-4) When the plaintiff proved that the insured was found dead with a pistol wound through his head and that this caused his death, he had made out a *prima facie* case under the policy. The reason is that there is a presumption that one does not commit suicide. Such a presumption being one of evidence, stands until overthrown by evidence. As stated by Judge Agnew in *Allen* v. *Willard,* 57 Pa. 374, "The natural instinct which leads men in their sober senses to avoid injury and preserve life is an element of evidence. In all questions touching the conduct of men, motive, feeling and natural instincts are allowed to have their weight and to constitute evidence for the consideration of courts and juries."

(5) The defendant claimed that the insured had committed suicide, which is made an exception to the risk of the policy. This was a defense and the law cast upon the company the burden of proving it.

The policy insures against death to Sears by external, violent and accidental means. It is made subject to a condition that the defendant is not liable in case of the suicide of the insured. The occurrence of this condition operates to defeat the policy, and this fact should be shown by the party relying on it. 1 Cyc. 289; 1 Corpus Juris, § § 278 and 284, pp. 495 and 496; 14 R. C. L., § 416, pp. 1235 and 1236; *Travellers Ins. Co.* v. *McConkey,* 127 U. S. 661; *Coburn* v. *Travelers Ins. Co.,* 145 Mass. 226; *Starr* v. *Aetna Life Ins. Co.* (Wash.), 4 L. R. A. (N. S.) 636, and case note; *Cronkhite* v. *Travelers Ins. Co.,* 75 Wis. 116, 17 Am. St. Rep. 184; *Meadows* v. *Pac. Mut. L. Ins. Co.,* 129 Mo. 76, 50 Am. St. Rep. 427; *Fetter* v. *Fidelity & Casualty Co.,* 174 Mo. 256, 97 Am. St. Rep. 560; *Ins. Co.* v. *Bennett,* 90 Tenn. 256, 25 Am. St. Rep. 685; *Wilkinson* v. *Aetna Life Ins. Co.,* 240 Ill. 205.

In a case note to 9 A. & E. Ann. Cas. at page 921, it is said that accident policies generally contain a clause, the purpose of which is to relieve the insurer from responsibility in case of death of the insured caused by intentional injuries inflicted by the insured or some third person, or caused by disease, or caused by voluntary exposure to unnecessary danger, etc.; and that where the insurer sets up the breach of one of these conditions as a defense, the burden is of course upon it to prove by a preponderance of the evidence that death was caused by a breach of one of these conditions.

The rule, we believe, is not only supported by the better reasoning but is in accord with the great weight of authority as shown by the cases cited in the note just referred to. This general rule is also in accord with the trend of our decisions bearing on the question.

In *Grand Lodge of Ancient Order of United Workmen* v. *Banister,* 80 Ark. 190, it was held that where, in a suit upon a benefit certificate, the insurer claims nonliability upon the ground that the insured committed suicide, the burden of proving that fact is upon the defendant. It is true this was an action on a life insurance policy and that there is a difference in the amount of proof required to recover on a life insurance policy and on an accident policy. In the former, all that is necessary for the plaintiff to show to make out a *prima facie* case is the contract and death. In the latter, in addition to this, the plaintiff in order to recover must prove that the death or injury was accidental within the meaning of the terms of the policy. This difference, however, does not in any manner affect the reasons for the rule casting upon the defendant the burden of proving suicide when that is alleged as a defense to the policy. Both in actions on life and accident insurance policies, the plaintiff must first make out a *prima facie* case, and when that is done, the defendant having set up a breach of a condition of the policy as a defense, the burden is upon it to prove by a preponderance

of the evidence that the death was caused by a breach of this condition.

In the present case it is shown beyond question or dispute that the insured came to his death by external and violent means. The only controverted question of fact in the case is as to whether or not he committed suicide. This being the case under the principles of law above announced, the court did not commit reversible error in giving the instruction complained of.

(6) The jury returned a verdict for the plaintiff in the sum of $8,000, and there is no claim that the plaintiff was not entitled to recover this sum under the terms of the policy. The court fixed the attorneys' fee at $1,000. It is claimed that this is excessive, as being evidently made upon the basis of a contingent fee. We do not agree with counsel in this contention. We have held that the court should only allow a reasonable fee for legal services performed and that this should not be made on the basis that the fee was contingent. *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554. In that case the policy sued on was $10,000 and the court allowed a fee of $2,000. We held that this was unreasonable and that $1,000 would have been a reasonable fee. Here the recovery was for $8,000 and we do not think, when all the circumstances of the case are considered, that a fee of $1,000 was excessive. Three attorneys who testified on the question stated that $1,500 would have been a reasonable fee, but we think that the court properly fixed it at not exceeding a thousand dollars.

The judgment will be affirmed.