Cecil **POWERS**, Appellant,

v.

**CONTINENTAL CASUALTY COMPANY**
and St. Paul Fire and Marine Insurance Company, Appellees.

No. 16572.

United States Court of Appeals
Eighth Circuit.

April 17, 1962.

Robert J. White and James K. Young, Russellville, Ark., for appellant; W. H. Schulze, Russellville, Ark., was with them on the brief.

Alston Jennings, Little Rock, Ark., for appellee; J. W. Barron, Little Rock, Ark., was with him on the brief.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

PER CURIAM.

This is an appeal by plaintiff Powers from a judgment in favor of the defendants, Continental Casualty Company (hereinafter Continental) and St. Paul Fire and Marine Insurance Company (hereinafter St. Paul). The judgment was entered pursuant to a jury verdict in favor of the defendants. Jurisdiction, based on diversity of citizenship, is established.

On June 15, 1959, plaintiff Powers, a resident of Russellville, Arkansas, went to Fort Smith, Arkansas. He there purchased a $50,000 accident insurance policy from St. Paul through the agency of Donaho & Son. He then proceeded to the Bicknell agency in Fort Smith and purchased another $50,000 accident insurance policy from Continental. Each policy was issued for a period of 60 days, against the risk of accidental bodily injury. Thirteen days later, while on a short fishing trip with three other persons, plaintiff was shot in the back of the left arm when a 12-gauge shotgun, borrowed and brought on the trip by one of his companions, discharged. Because of such injury it was necessary to amputate plaintiff's left arm above the elbow.

Plaintiff sued each of the defendants in an Arkansas state court, seeking to recover $25,000 from each under the terms of the policies described above. Defendants removed the actions to the United States District Court for the Eastern District of Arkansas, where they were consolidated for trial with a third action by plaintiff against Underwriters at Lloyd's, London (no longer involved in this action) from whom he had purchased a $100,000 accident insurance policy on May 11, 1959. This policy was purchased through an agent in Russellville.

Defendants admitted the issuance, validity and coverage of their policies but specifically denied plaintiff's allegation that the injury he received was accidental. The only fact issue submitted to the jury was whether the gunshot wound which necessitated the amputation of the left arm was an accidental injury. We observe that on this appeal no criticism is made of the court's instructions nor any errors asserted with reference to the reception or rejection of evidence.

Plaintiff at the close of all of the evidence moved for a directed verdict "for the reason there is no substantial testimony in this record that the loss of the arm was by other than accidental means."

After verdict for defendants, plaintiff made motion for judgment in accordance with his motion for directed verdict, and in the alternate for a new trial. All such motions were overruled. Plaintiff asserts that the court erred in overruling each of said motions.

■ We will first consider plaintiff's contention that the court erred in refusing to direct a verdict in his favor. In an action to recover accident insurance proceeds the burden is upon the plaintiff to allege and prove that the injury was accidental within the terms of the policy. Aetna Life Ins. Co. v. Taylor, 128 Ark. 155, 193 S.W. 540; National Life & Accident Ins. Co. v. Hampton, 189 Ark. 377, 72 S.W.2d 543, 544; Mutual Ben. Health & Accident Ass'n v. Basham, 191 Ark. 679, 87 S.W.2d 583, 586; 21 Appleman, Insurance Law and Practice, § 12141. Thus, the burden was on plaintiff to establish the fact that his injury was accidentally incurred.

■ It is an exceptional case wherein the party on whom rests the burden of proof is entitled to a directed verdict in his behalf. 88 C.J.S. Trial § 257(g).

"A verdict upon an issue of fact should not be directed in favor of the party who has the burden of proof with respect thereto, unless such fact is admitted, or is established by the undisputed testimony of one or more disinterested witnesses and different minds cannot reasonably draw different conclusions from such testimony. Douglass v. Flynn, 43 Ark. 398; St. Louis, I. M. & S. R. Co. v. Coleman, 97 Ark. 438, 135 S.W. 338; Kesterson v. Hays, 137 Ark. 592, 209 S.W. 721; Smith v. McEachin, 186 Ark. 1132, 57 S.W.2d 1043; Pickens v. Westbrook, 191 Ark. 156, 83 S.W.2d 830." Woodmen of the World Life Ins. Soc. v. Reese, 206 Ark. 530, 176 S.W.2d 708, 712.

In Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218, the Supreme Court states: "Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue."

Defendants here have denied plaintiff's allegation that the injury was accidental. While plaintiff has offered testimony to establish the accidental nature of his injuries, we cannot say from the record as a whole that plaintiff has established as a matter of law that he is entitled to a directed verdict. Plaintiff and his fishing companion Tucker are the only witnesses who purported to testify as to the facts surrounding the discharge of the gun. Their companions heard the discharge of the gun but were not in a position to see and did not attempt to testify as to the facts relating to the shooting. The testimony of plaintiff and Tucker if believed would support a finding that the shooting was accidental. However, it is obvious from the verdict that the jury did not accept this testimony. Arguments to the jury were completed at 10:30 a. m. The jury returned its verdict for defendants at 11:40 that same morning. The court by denying the motion for new trial expressed its belief that the jury had reached a permissible conclusion upon the evidence.

In Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440, we discussed the effect to be given by the jury to uncontradicted evidence and among other things stated:

"It is elementary that in the trial of an action at law, the jurors are the sole and exclusive judges of the facts, of the credibility of the witnesses, and of the weight of the evidence. Evidence which is uncontradicted is not necessarily to be accepted as true. Its weight and the credibility of the witnesses who gave it are usually for the jury to determine."

■ The factfinder is not compelled to believe the testimony of a witness even if it is uncontradicted. Northwest Airlines, Inc. v. Rowe, 8 Cir., 226 F.2d 365, 371; Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735, 738

This rule has particular application in the case of an interested witness such as the plaintiff. It would also seem that Tucker may have a personal interest in supporting the accident theory as it was defendants' contention that Tucker fired the gun. The evidence discloses that Tucker was at a place where he could reach and discharge the gun and that he was the only person in such position.

Where there were no other eyewitnesses who could contradict directly the testimony of plaintiff and Tucker as to the shooting, we believe that the jury could well have found that the explanation of the shooting was neither clear nor convincing. There is much evidence to squarely contradict much of the plaintiff's testimony relating to the rather unusual procurement by him of three large accident policies and the reasons assigned by him for obtaining them.

Plaintiff is 44 years old. He was in military service for about nine months and draws a disability pension of $262.50 per month. He owns no property and has no other income and has been unemployed since January, 1953.

Plaintiff paid a premium of $157 for the $100,000 Lloyd's of London policy. He gave as the reason for its purchase that the agent who sold it to him owed him money, and told plaintiff that it would help him (the agent) out if plaintiff would buy the policy.

Some time between May 11, 1959 and June 15, 1959, plaintiff and the above mentioned agent went to Conway, Arkansas, where plaintiff applied for another $100,000 accident insurance policy. He specifically requested that such policy be written in American Casualty Company for the reason that he had heard it was a good reputable company. The application was rejected. Plaintiff stated that had it been issued, he intended to cancel his Lloyd's of London policy.

The Donaho & Son agency in Fort Smith, Arkansas, prior to issuing the St. Paul policy here in suit, had prepared a $50,000 policy underwritten by the American Casualty Company, mentioned above, for a premium of $54.10. Plaintiff left and returned a few minutes later explaining that his wife who was outside in the car and once had trouble collecting a claim against American, and asking that a policy written in a different company be issued. For an additional premium of $10.70, the $50,000 St. Paul policy in suit was substituted. (It was undisputed at trial that plaintiff's wife was not in Fort Smith, Arkansas, with plaintiff on the day the above policy was purchased.)

Plaintiff paid $75.35 for the Continental policy here in suit. As he had done at the Donaho & Son agency, he explained to the Bicknell agency, who issued the Continental policy, that he and his wife were traveling on an extended vacation and had witnessed an accident between Russellville and Fort Smith, which prompted him to stop and get insurance.

When asked at trial to explain why he purchased the policies in suit, plaintiff stated that while in Fort Smith three or four months prior to June 15th, he struck up a conversation with a stranger named Jan Kelskie, who asked if he would be interested in driving some cars to California; that plaintiff said he wasn't interested; that he ran into Kelskie again by chance in Little Rock; that plaintiff then stated an interest in driving the cars to California; that three or four weeks before June 15th Kelskie told him he would have to have insurance before he could drive the cars; that he was to take the cars to California on July 1; that plaintiff did not at the time in question have any form of driver's license, and still had none on June 28th, when the injury occurred; and that since the injury he has been unable to locate Jan Kelskie, although he promised to do so, if he could, when his deposition was taken prior to trial.

In filing proof of loss with each of the three insurance companies, plaintiff utilized the services of three separate Russellville attorneys. On one form he stated that he had no other insurance, and on another form he revealed only one of his other policies. On one form he stated

he was self employed buying and selling real estate and stocks and bonds, but admitted at trial that he had never done either.

■ The jury saw and heard the witnesses. It is the historic function of the jury to determine the credibility of witnesses and the weight to be given their testimony. There is evidence before the jury which, if believed, would warrant the jury in determining that the testimony of the plaintiff and Mr. Tucker was untrue in some respects. The jury had a right to consider such evidence in determining the credibility of such witnesses.

■ The record in our present case is such that reasonable minds could differ as to the fact issue of the accidental nature of plaintiff's injury. This is particularly true in light of the law placing the burden upon the plaintiff to prove that the injury was accidental. We can not say that the plaintiff has conclusively met this burden. The court did not err in denying plaintiff's motion for a directed verdict, made at the close of the evidence. For the same reasons, no error was committed in overruling plaintiff's post-trial motion for judgment in accordance with his motion for directed verdict.

■ Plaintiff's contention that the court erred in refusing to grant him a new trial is without merit. Ordinarily the granting or refusal of a new trial is not subject to review by an appellate court. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439; Glawe v. Rulon, 8 Cir., 284 F.2d 495, 498; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436.

■ In any event, it is clear that a motion for new trial is directed to the sound discretion of the trial court and that the action of the trial court on such a motion will be reviewed only upon clear showing of abuse of discretion. Greene v. Werven, 8 Cir., 275 F.2d 134, 141; Altrichter v. Shell Oil Co., 8 Cir., 263 F. 2d 377, 380; Stofer v. Montgomery Ward & Co., 8 Cir., 249 F.2d 285, 288.

As aptly stated by the Supreme Court in the Fairmount Glass Works, supra: "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct." 287 U.S. 485, 53 S.Ct. 252.

■ It is readily apparent from what we have said on the directed verdict issue that the plaintiff has wholly failed to establish that the trial court abused its discretion in overruling his motion for new trial.

The judgment appealed from is affirmed.