UNITED STATES, Appellant,

v.

Anthony R. TYLER, Appellee.

Anthony R. TYLER, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10113, 10289.

District of Columbia Court of Appeals.

Argued Nov. 9, 1976.

Decided June 13, 1977.

---

4. I refer, of course, to Roots, by Alex Haley.

5. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Richard A. Graham, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Edward D. Ross, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant in No. 10113.

Steven D. Gordon, Asst. U. S. Atty., Washington, D. C., was on the brief, for appellee in No. 10289.

Akwasi Olu Agyeman, Washington, D. C., appointed by the court, for Anthony R. Tyler.

Before KELLY, KERN and NEBEKER, Associate Judges.

KELLY, Associate Judge:

Appellant Tyler was brought to trial on charges of grand larceny and unauthorized use of a vehicle. D.C.Code 1973, §§ 22–2201, –2204. The trial court granted Tyler's motion for a directed verdict of not guilty by reason of insanity at the close of all the evidence and committed him to St. Elizabeths Hospital pursuant to D.C.Code 1973, § 24–301(d)(1).[1] At a later hearing under § 24–301(d)(2),[2] Tyler was adjudged ineligible for conditional release from the hospital. The government appeals from the directed verdict of not guilty by reason of insanity. Tyler appeals the denial of his motion for conditional release.

I.

The complaining witness testified at trial that on November 29, 1974, she left her 1971 Dodge Charger idling at the curb to let it warm up as she was locking up her

---

1. D.C.Code 1973, § 24–301(d)(1) provides:

    If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e).

2. D.C.Code 1973, § 24–301(d)(2), provides in pertinent part:

    A person confined pursuant to paragraph (1) shall have a hearing, unless waived, within 50 days of his confinement to determine whether he is entitled to release from custody. . . .

grocery store. While she was away from the car, Tyler, a recognized patron of her store, entered the car and drove it away. The complainant identified Tyler as the person who took her car and, in addition, a police officer testified that the complainant had identified Tyler at a lineup following his arrest.

Tyler raised a defense of insanity through the testimony of three experts, two of whom were called by the trial judge. Their testimony was that on November 2, 1974, Tyler was admitted to St. Elizabeths Hospital on an emergency basis in an acutely psychotic condition. He was released on November 18 because he was no longer thought to be a threat either to himself or to the community. Eleven days later, on November 30, 1974, Tyler was arrested for the instant crime. He was ultimately released on his personal recognizance on January 10, 1975. On February 8, 1975, Tyler appeared at Providence Hospital in the midst of what was diagnosed as an acute schizophrenic episode. Dr. Joel Cohen saw him there daily until March 12, 1975, when it was decided he had recovered sufficiently to be released. In a report dated April 15, 1975, Dr. Cohen described his diagnosis, the nature of the treatment and the nature of Tyler's recovery. He stated that Tyler had been psychotic for "maybe six months" before his admission. Dr. Howell J. Howard, Jr., of the Department of Human Resources, examined Tyler on June 23, 1975 for one hour. On the basis of this examination and of Dr. Cohen's April report, Dr. Howard concurred in the diagnosis of acute schizophrenia which existed at the time of the offense. Finally, Tyler was committed to St. Elizabeths for observation pursuant to a court order dated July 30, 1975. Dr. Thomas Carl Goldman examined him there for one to two hours on August 7, 1975, having before him Dr. Cohen's April report and the St. Elizabeths' admission report of November 2, 1974. He too concurred in Dr. Cohen's diagnosis.

The government offered no evidence or testimony in its case on the issue of insanity. The prosecutor did examine the defense witnesses extensively, and brought out that the symptoms displayed by Tyler on November 2, 1974 and February 8, 1975 were similar to those found in sufferers of a toxic psychosis caused by drug ingestion. The possibility that those symptoms were caused by drugs was ruled out by Dr. Cohen and Dr. Goldman, however, on the basis of Tyler's statements to Dr. Cohen that although he had in the past used a wide variety of drugs he had not done so before his admission to St. Elizabeths on November 2, 1974, and to Providence Hospital on February 8, 1975. Tyler had not been asked by Dr. Cohen if he had used drugs before the offense, although he himself denied having done so at trial.

At the close of the testimony defense counsel moved for a directed verdict of not guilty by reason of insanity. Recognizing that he could not rule on the issue absent a finding or admission of guilt, the trial judge asked Tyler if he were inclined to plead guilty "for purposes of the motion" only. Tyler said that he was and the trial judge, over the government's vigorous protest, accepted what he termed as a "partial" plea and granted the defense motion for a directed verdict of not guilty by reason of insanity. It is from this order that the government appeals.

Tyler was committed to St. Elizabeths Hospital on September 24, 1975. See D.C. Code 1973, § 24–301(d)(1). At a hearing on November 18, 1975, to determine if he was eligible for conditional release it was held that he was not. See D.C.Code 1973, § 24–301(d)(2). Tyler appeals from that ruling pursuant to the provisions of § 24–301(d)(3).[3]

## II.

A threshold issue is whether the government's appeal from the direction of the insanity verdict is barred by considerations

---

3. D.C.Code 1973, § 24–301(d)(3) provides:

   An appeal may be taken from an order entered under paragraph (2) to the court having jurisdiction to review final judgments of the court entering the order.

of double jeopardy and/or by the provisions of D.C.Code 1973, § 23–104(c).[4]

The government argues that the trial judge lacked the power to take from the jury the factual issues of guilt or insanity. As a consequence, the entire trial proceeding was a nullity because there was neither a conviction nor an acquittal. It contends that as the fact-finding process was aborted at Tyler's behest, Tyler is in the same position as a defendant who has successfully requested a mistrial, thus permitting reprosecution. *United States v. Jorn*, 400 U.S. 470, 486, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970); *United States v. Tateo*, 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Consistent with this theory, the government requests a remand for a new trial on the issues of guilt and insanity. Tyler, on the other hand, argues that the directed insanity verdict was the equivalent of an acquittal on the merits, precluding a retrial both on the principles of double jeopardy and the provisions of § 23–104(c). In the alternative, Tyler argues that the trial judge properly directed the verdict of not guilty by reason of insanity. We conclude for the reasons explained below that the directed insanity verdict was not an acquittal on the merits which bars the government's appeal.

■ First, stating the obvious, once the issue of insanity has been fairly raised in a criminal case three possible verdicts can be returned—guilty, not guilty, or not guilty by reason of insanity. *See Lyles v. United States*, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957). A verdict of not guilty by reason of insanity is, of course, a misnomer for it simply means that despite the fact that an accused committed a crime, he is not criminally responsible for its commission. But for the fact that he was not culpable he would have been guilty. *United States v. Shorter*, D.C.App., 343 A.2d 569 (1975); *United States v. Battle*, 166 U.S.App.D.C. 396, 510 F.2d 776 (1975); *United States v. Brown*, 155 U.S.App.D.C. 402, 478 F.2d 606 (1973); *Rucker v. United States*, 108 U.S. App.D.C. 75, 280 F.2d 623 (1960). And the consequence of such a verdict is confinement to a mental institution in lieu of a criminal penalty. *See* D.C.Code 1973, § 24–301(d)(1).

■ Tyler moved not for a judgment of acquittal but, having entered a plea, for a directed insanity verdict. It is thus obvious that the verdict of not guilty by reason of insanity was not an acquittal on the merits within the meaning of D.C.Code 1973, § 23–104(c), and consequently, that section does not bar the present appeal.[5]

4. D.C.Code 1973, § 23–104(c) reads as follows:
   The United States or the District of Columbia may appeal an order dismissing an indictment or information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits.

5. Neither the Supreme Court nor our court has ever directly held that a verdict of not guilty by reason of insanity is or is not the functional equivalent of an acquittal on the merits. In deciding that dismissal of an indictment is not an acquittal for double jeopardy purposes, the Supreme Court said in *Serfass v. United States*, 420 U.S. 377, 392, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975), that "[t]he word [acquittal] itself has no talismanic quality for purposes of the Double Jeopardy Clause." It cannot "be divorced from the procedural context in which the action so characterized was taken." *Id.* This kind of thinking indicates a refusal by the Court to characterize any termination of a criminal proceeding in "favor" of the accused as an "acquittal."

In no case cited by Tyler, *e. g., Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), where appeal was barred following acquittal, was a verdict of not guilty by reason of insanity involved. In any event, as we discuss *infra*, the touchstone of the double jeopardy area is not simply whether there has been an "acquittal."

It is interesting to note that the federal counterpart of § 23–104(c), 18 U.S.C. § 3731, was amended in 1971 to bar appeals by the government "where the double jeopardy clause of the United States Constitution prohibits further prosecution." In discussing this amendment, the Supreme Court, in *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975), said:
   While the language of the new Act is not dispositive, the legislative history makes it clear that Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit.

Although an express enabling statute is required before the government can appeal, *Unit-*

■ Implicit in the directed verdict is government proof beyond a reasonable doubt of every element of the offense. *United States v. Shorter, supra; United States v. Ashe*, 155 U.S.App.D.C. 457, 478 F.2d 661 (1973). Sanity, as distinct from intent, is not an element of either grand larceny or of an unauthorized use of a vehicle, nor does proof of insanity negate intent. Instead, the lack of sanity relieves a defendant of criminal responsibility for committing the offense. *See Mullaney v. Wilbur*, 421 U.S. 684, 705–06, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (Rehnquist, J., concurring); *Bethea v. United States*, D.C.App., 365 A.2d 64, 94 (1976); *United States v. Greene*, 160 U.S.App.D.C. 21, 31, 489 F.2d 1145, 1155 (1973), *cert. denied*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974).

■ The question of whether a defendant should be held criminally responsible for his antisocial acts cannot be reached until guilt has been found by the trier of fact or admitted by the defendant. *See United States v. Brawner*, 153 U.S.App.D.C. 1, 40, 471 F.2d 969, 1008 (1972). Here, an alert trial judge had a lengthy conversation with Tyler explaining to him this element of the law. It is nevertheless plain from the conversation that the trial judge did *not* promise to direct the verdict in favor of Tyler *if* Tyler would plead guilty. He merely told Tyler that he would only be able to consider the motion if he would plead guilty to the charges, thereby conceding that the government had proven its case beyond a reasonable doubt. This Tyler did and his plea has the same effect as any other, *i. e.*, it is the equivalent of a jury finding of proof of all elements of the offense beyond a reasonable doubt.[6] *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *Katz v. Katz*, D.C.Mun.App., 136 A.2d 261 (1957); *United States v. Wiggins*, 184 F.Supp. 673 (D.D.C.1960). Because Tyler's plea finally determined the issue of his guilt, we treat the government's appeal as one from the disposition of the case after essential facts for double jeopardy purposes were found. The trial judge did not direct a verdict of guilty and thereby usurp the jury's function and deny the government its right to have the jury decide the issue of guilt. The court simply allowed the defendant to concede that the government proved its case beyond a reasonable doubt. Nothing in the Constitution bars an appeal in such a case.

■ In a recent series of decisions the Supreme Court has explained that double jeopardy bars a government appeal if the appeal could result in a retrial on the issue of guilt or innocence.[7] *United States v. Morrison*, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976); *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Where retrial is not required, the government may appeal. Thus, where there has been a verdict of guilt followed by an acquittal by the court, a government appeal is not barred

---

ed States v. Sanges, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892), and § 23–104(c) has not been similarly amended, our holding is consistent with both the Supreme Court's recent line of cases and congressional thinking in the double jeopardy area.

6. The following excerpt from the trial transcript at 255 makes this clear:

THE COURT: The record is clear. The Court grants the motion of the defendant for a directed verdict of not guilty by reason of insanity. The record itself is clear that the defendant, for the purpose of this motion, conceded that the Government had proved the necessary facts.

THE PROSECUTOR: Beyond a reasonable doubt?

THE COURT: That is why I made specific inquiry not only of counsel, but of the de-

fendant himself so the record was clear both as to counsel and the defendant conceded that fact. And I think it is beyond question. In any event, the evidence is clear cut.

As far as we are aware, there is no such thing in contemplation of law as a "partial plea" of guilty.

7. We do not discuss the problem of when double jeopardy bars a second trial following declaration of a mistrial. The Court has recently addressed that issue in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Our concern is with the applicability of the double jeopardy clause to proceedings which resulted in a ruling favorable to the defendant.

because a reversal would require only reinstatement of the guilty verdict, not a second trial. *United States v. Jenkins, supra*, 420 U.S. at 365, 95 S.Ct. 1006.

The Court has specifically rejected the argument Tyler urges here, namely, that double jeopardy bars an appeal whenever the defendant can point to a prior verdict or judgment of acquittal. *United States v. Wilson, supra*, 420 U.S. at 347–48, 95 S.Ct. 1013. The results in the *Fong Foo v. United States*, 369 U.S. 141, 85 S.Ct. 671, 7 L.Ed.2d 629 (1962), and *Kepner v. United States*, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), line of cases, upon which Tyler relies, are consistent with this holding, for in every case in which an appeal has been barred, a retrial would have been required. It is this fact rather than the fact of an acquittal which forms the basis for the Court's holdings.[8]

Even assuming that the trial judge's ruling could be termed an acquittal, we believe that this case falls squarely within the holding in *United States v. Wilson, supra*, 420 U.S. at 352–53, 95 S.Ct. at 1026, that

> when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause.

■ As we said above, Tyler's plea of guilty is the equivalent of a jury verdict of guilt on all issues save responsibility. Should the government prevail on its appeal, the issue of insanity will be resubmitted to a jury, but no new trial will be required on the issue of guilt or innocence for the plea stands. Consequently the double jeopardy clause is no bar to this appeal.

## III.

Turning to the question of whether the trial judge committed reversible error in directing a verdict of not guilty by reason of insanity, we hold that he did.

The government argues that it is no longer proper to direct an insanity verdict because D.C.Code 1973, § 24–301(j) places upon the defendant the burden of establishing a defense of insanity by a preponderance of the evidence. It claims that since it was previously allowed to rely on weaknesses in the defendant's case in rebutting a claim of insanity when the burden was on the government to prove sanity beyond a reasonable doubt,[9] *a fortiori*, it can now rely on defense weaknesses since the burden has been placed on the defendant. Furthermore, the government argues that the unique aspects of the insanity defense make the issue one exclusively for the jury.

Conversely, Tyler contends that it was proper to direct an insanity verdict because he clearly proved his insanity by a preponderance of the evidence. He argues that the government failed to create through its cross-examination any inconsistencies which would present an issue for the jury. He also argues that despite the 1970 amendment to § 24–301(j), the burden of proving causality remains with the government.

Tyler's arguments do not appreciate the significance of § 24–301(j) and fail to take into account unique considerations in the insanity area. Section 24–301(j) states in part:

> No person accused of an offense shall be acquitted on the ground that he was insane at the time of its commission unless his insanity, regardless of who raises the

---

8. In *Fong Foo v. United States, supra*, the trial judge directed the jury to return verdicts of acquittal in the midst of the government's case. In holding that the double jeopardy clause barred the government's appeal the Court said that although the acquittals may have been based on an "egregiously erroneous foundation", they were final and could not be reviewed on appeal without violating the double jeopardy clause. In seeking to distinguish *Fong Foo*, the government points out that the

Court did not say the trial judge had no authority to act as he did, whereas in this case the trial judge was totally without such authority. We find this distinction unnecessary in light of *Wilson* and of our determination that a directed insanity verdict is not an acquittal on the merits.

9. *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

issue, is affirmatively established by a preponderance of the evidence.[10]

■ In the eyes of the law, sanity has long been presumed. *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). And while the issue is elsewhere in dispute,[11] juries in the District of Columbia are instructed to consider this presumption along with other evidence on the issue adduced at trial. *Davis v. United States, supra; Bethea v. United States, supra; Durham v. United States,* 94 U.S.App. D.C. 228, 214 F.2d 862 (1954).

Before July 1970, once the defendant had produced evidence of a mental disease or defect sufficient to create an issue for the jury, the government had the burden of proving the defendant's sanity beyond a reasonable doubt. *Davis v. United States, supra; McDonald v. United States,* 114 U.S. App.D.C. 120, 312 F.2d 847 (1962) (en banc); *Durham v. United States, supra.* Thus, in some instances it was permissible to direct a verdict of not guilty by reason of insanity. *Isaac v. United States,* 109 U.S.App.D.C. 34, 284 F.2d 168 (1960); *Satterwhite v. United States,* 105 U.S.App.D.C. 398, 267 F.2d 675 (1959); *Fielding v. United States,* 102 U.S. App.D.C. 167, 251 F.2d 878 (1957); *Douglas v. United States,* 99 U.S.App.D.C. 232, 239 F.2d 52 (1956). But even where such a duty exists, direction of a verdict was to be "performed with caution . . . because of the deference due to the jury in resolving factual issues." *Douglas v. United States, supra* at 237, 239 F.2d at 57.

In other cases, all before 1970, the court expressed an increasing reluctance to direct an insanity verdict. *United States v. Eichberg,* 142 U.S.App.D.C. 110, 439 F.2d 620

(1971); *Naples v. United States,* 120 U.S. App.D.C. 123, 344 F.2d 508 (1964); *McDonald v. United States, supra.* For example, in *King v. United States,* 125 U.S.App. D.C. 318, 322, 372 F.2d 383, 387 (1967), the court said:

Since *McDonald,* where we examined at some length the problem of expert testimony and jury consideration of the insanity question, this court has been chary of directed verdicts of not guilty by reason of insanity, even where expert testimony is uncontradicted. . . .

■ This reluctance stems in part from the recognition that the issue of insanity is one of fact, to be determined only by the finder of fact. *McDonald v. United States, supra; Durham v. United States, supra.* This court in its recent opinion in *Bethea v. United States, supra* at 76, quoted the Second Circuit's analysis:

At bottom, the determination whether a man is or is not held responsible for his conduct is not a medical but a legal, social or moral judgment. Ideally, psychiatrists—much like experts in other fields—should provide grist for the legal mill, should furnish the raw data upon which the legal judgment is based. . . . But once this information is disclosed, it is society as a whole, represented by judge or jury, which decides whether a man with the characteristics described should or should not be held accountable for his acts. [*United States v. Freeman,* 357 F.2d 606, 619–20 (1966).]

The problem has been that with the development of the science of psychiatry and the increasing use of expert testimony at trial it is too often the expert and not the

---

10. Although the constitutionality of § 24–301(j) is not challenged here, we note that this court, following the Supreme Court's decision in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), has declared it constitutional to place the burden of proving insanity by a preponderance of the evidence on the defendant. *Bethea v. United States, supra; Shanahan v. United States,* D.C.App., 354 A.2d 524 (1976). *But see Buzynski v. Oliver,* 538 F.2d 6 (1st Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 503, 50 L.Ed.2d 596 (1976), expressing doubt as to the continued validity of *Leland v. Oregon,*

*supra. See also United States v. Eichberg,* 142 U.S.App.D.C. 110, 113–15, 439 F.2d 620, 623–25 (1971) (Bazelon, C. J., concurring); *Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970).

11. *E. g., United States v. Sennett,* 505 F.2d 774 (7th Cir. 1974); *United States v. Hereden,* 464 F.2d 611 (5th Cir.), *cert. denied,* 409 U.S. 1028, 93 S.Ct. 472, 34 L.Ed.2d 322 (1972); *United States v. Arroyave,* 465 F.2d 962 (9th Cir. 1972).

fact finder who actually decides the issue. As we said in *Bethea v. United States, supra:*

> The chronic problem has been the elusiveness of a formulation which would provide a medically meaningful structure within which the experts may render accurate and relevant testimony, while preserving for the jury its full authority to find the facts and reach their legal-moral conclusion on the ultimate issue of responsibility. *See United States v. Chandler,* 393 F.2d 920, 925–26 (4th Cir. 1968) (en banc); *see also King v. United States,* 125 U.S.App.D.C. 318, 324–25, 372 F.2d 383, 388–89 (1967). [*Id.* at 73–74.]

Under the test articulated in *Durham* the expert witnesses' function was to inform the jury of the character of the accused's mental disease or defect.[12] The experts were not allowed to testify as to causality.[13] The jurors were not bound by the expert testimony and could decide for themselves whether the unlawful act was the product of the mental disease or mental defect in determining the ultimate issue of criminal responsibility. As the court in *McDonald v. United States, supra,* 114 U.S.App.D.C. at 124, 312 F.2d at 851, put it:

> We emphasize that, since the question of whether the defendant has a disease or defect is ultimately for the triers of fact, obviously its resolution cannot be controlled by expert opinion. The jury must determine for itself, from all the testimony, lay and expert, whether the nature and degree of the disability are sufficient to establish a mental disease or defect as we have now defined those terms. . . [Footnote omitted.]

So that the jury is able to make these determinations, the experts must explain the bases for their conclusions as well a "the nature of the disability, its characteristics, and its symptomatology." *Bethea v. United States, supra* at 81. And because the jurors are aware of the bases for the testimony, they are free to disregard even uncontradicted expert testimony. *King v. United States, supra.*

It must be remembered that the jury has before it the presumption of sanity, the effect of which is, as explained in *McDonald v. United States, supra:*

> Whether uncontradicted expert testimony overcomes the presumption [of sanity] depends upon its weight and credibility, and weight and credibility ordinarily are for the jury. [*Id.,* 114 U.S.App.D.C. at 123, 312 F.2d at 850.]

As the law of insanity evolved, even when the government had the burden of proving sanity beyond a reasonable doubt, it could carry that burden without presentation of evidence by relying on the weaknesses of the defendant's case or on the presumption of sanity. Now that the burden is on the defense, only in exceptional circumstances should a court take the case from the jury by directing a verdict of insanity. The jury is always free to find a defendant sane even if the government does not contradict the expert testimony by witnesses of its own. We conclude, therefore, that it was error for the trial judge to take the issue of Tyler's sanity from the jury for in so doing, the court in effect allowed the experts to decide the issue of sanity and this it cannot do. As we made clear in *Bethea v. United States, supra* at

---

12. The *Durham* test is "simply that an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect." *Durham v. United States, supra,* 94 U.S.App.D.C. at 241, 214 F.2d at 874–75; footnote omitted.

13. The *Durham,* or *Durham-McDonald,* test was the law in the District of Columbia when this case was tried. Since then we have adopted a variation of the ALI standard, which the court terms the ALI-*McDonald* standard. *Bethea v. United States, supra.* Among other things this test substitutes the word "result" for "product" in an attempt to avoid misleading lay jurors who apparently thought the term "product" had some scientific significance. It also allows expert witnesses to testify as to causality. Although our opinion in *Bethea* follows the lead of the federal court in *United States v. Brawner,* 153 U.S.App.D.C. 1, 471 F.2d 969 (1972) (en banc), it should be remembered that the federal court places the burden on the government while under our statute it is on the defendant.

82, it is for the jury alone to decide the issue of criminal responsibility.[14]

■ In respect to Tyler's contention that the burden of showing causality remains with the government, we can find no authority for this proposition other than the opinion of the trial judge cited in Tyler's brief.[15] As the trial judge noted, that opinion is binding on no one, not even himself. On the contrary, the plain language of D.C. Code 1973, § 24-301(j) indicates that the entire burden of establishing an insanity defense is on the defendant, which necessarily includes causality as an essential element of the defense. *See United States v. Greene, supra,* 160 U.S.App.D.C. at 28, 489 F.2d at 1152.

#### IV.

■ As to Tyler's appeal from the order denying conditional release, the purpose of the hearing under D.C.Code 1973, § 24-301(d)(2) is to determine whether one who successfully prevailed on his insanity defense is entitled to early release because of an improvement in his condition. Contrary to appellant's contention, the discretionary language in § 24-301(d)(2) must be read in conjunction with § 24-301(e), for if a judge finds that one has shown by a preponderance of the evidence that he meets the standards for conditional or unconditional release under § 24-301(e), it can "enter such order as may appear appropriate."

Under § 24-301(e) the court is restricted to determining whether a person has so improved that he is no longer a danger to himself and/or others and the evidence presented at Tyler's hearing firmly supports the trial court's ruling. Both doctors who testified stated that Tyler's condition had *deteriorated* and that he did constitute a danger to himself and others. Tyler concedes as much in his brief, but argues that despite the clear language of § 24-301(d) and (e), the court can transfer him to Providence Hospital to receive what he deems to be "proper treatment."

■ Tyler did not meet the requirements of § 24-301(d) and (e), therefore, the trial judge correctly declined to grant his request for a change in the conditions of his confinement. His remedy lies instead in § 24-301(k) under which he can move for an order effecting the transfer he desires.

In view of our decision, we need not reach the issue of whether Tyler has been deprived of his right to treatment. The proper forum for such a determination is a hearing under § 24-301(k)(1).[16]

#### CONCLUSION

We hold that it was reversible error for the trial judge to direct a verdict of not guilty by reason of insanity. Accordingly, the case must be remanded for submission of the sanity issue to a jury.[17]

*Appeal No. 10113 reversed and remanded.*

*Appeal No. 10289 affirmed.*

KERN, Associate Judge, dissenting:

The pertinent facts as summarized by the majority (at 801) are:

> A person in custody or conditionally released from custody, pursuant to the provisions of this section, claiming the right to be released from custody, the right to any change in the conditions of his release, or other relief concerning his custody, may move the court having jurisdiction to order his release, to release him from custody, to change the conditions of his release, or to grant other relief.

14. We note that a motion for a directed verdict by the party with the burden of proof is unusual, as the device was meant for the party without the burden to challenge the sufficiency of the opponent's evidence. It is only in the rarest case that a verdict should be directed in favor of the party who bears the burden of proof. *Wilson v. United States,* 530 F.2d 772 (8th Cir. 1976); *Powers v. Continental Casualty Co.,* 301 F.2d 386 (8th Cir. 1962).

15. *United States v. Williams,* Cr.No. 59954-74, Memorandum Opinion of the Honorable Charles W. Halleck, Superior Court of the District of Columbia (Dec. 4, 1972).

16. D.C.Code 1973, § 24-301(k)(1) provides:

17. This result is not contrary to the recent case of *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), since no retrial or further proceeding to resolve factual issues going to the elements of the charged offense is required.

At the close of the testimony defense counsel moved for a directed verdict of not guilty by reason of insanity. Recognizing that he could not rule on the issue absent a finding or admission of guilt, the trial judge asked Tyler if he were inclined to plead guilty "for purposes of the motion" only. Tyler said that he was and the trial judge, over the government's vigorous protest, accepted what he termed as a "partial" plea and granted the defense motion for a directed verdict of not guilty by reason of insanity. It is from this order that the government appeals.

The majority concludes (at 806) that:

[I]t was error for the trial judge to take the issue of Tyler's sanity from the jury for in so doing, the court in effect allowed the experts to decide the issue of sanity and this it cannot do.

The majority then remands the case to the trial court "for submission of the sanity issue to a jury" (at 807).

I agree with the majority that the court erred under the facts here in taking the case from the jury after all the evidence was adduced and directing a verdict of not guilty by reason of insanity. However, as the Supreme Court teaches us in *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962), even when a trial court enters a "final judgment of acquittal . . . upon an *egregiously erroneous foundation*" (emphasis added), the Double Jeopardy Clause of the Constitution bars a retrial. In sum, neither the fact that the trial court erred, nor the degree of that error, affects the protection afforded against double jeopardy.

The majority seeks to avoid the Fifth Amendment command that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb" by reasoning that

[t]he issue of insanity will be resubmitted to a jury, but no new trial will be required on the issue of guilt or innocence for the plea stands. Consequently the double jeopardy clause is no bar to this appeal. [at 804.]

In my view, however, the majority's explanation why the government's appeal is not barred by the Double Jeopardy Clause is wholly at odds with the rationale of that Clause which the Supreme Court recently restated in *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977):

"The development of the Double Jeopardy Clause from its common-law origins . . . suggests that it was directed at the threat of multiple prosecutions, *not at Government appeals, at least where those appeals would not require a new trial.*" [*United States v. Wilson,* 420 U.S. 332, 342, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).] Thus *Wilson* held that the "controlling constitutional principle" focuses on prohibitions against multiple trials. *Id.,* at 346, 95 S.Ct. 1013. At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); see also *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963). [Emphasis added.]

Here, the trial court, after all the evidence was presented directed a verdict of not guilty by reason of insanity—a verdict the majority acknowledges (at 802) "means that despite the fact that an accused committed a crime, he is *not criminally responsible for its commission.* . . . And the consequence of such a verdict is confinement to a mental institution in lieu of a criminal penalty." (Emphasis added.) Now the majority reverses and remands for

further proceedings in which the government will *again* attempt to convict appellee of grand larceny and unauthorized use of an auto. Thus, the government's success on this appeal would subject appellee for the second time to the risk of criminal conviction for the same offenses. This fact, I believe, precludes our entertaining this appeal by the government.

Furthermore, essential to the majority's holding that the Double Jeopardy Clause does not bar the government's appeal here is its conclusion that appellee's "partial plea" resolved once and for all the issue of his guilt or innocence. As the majority admits, however, the record clearly reflects that appellee's concession was made and accepted by the trial court for the purpose of his directed verdict motion *only*. To construe such a concession as a guilty plea binding upon appellee for all purposes embraces a position the government did not take on appeal and ignores the government's concern that a verdict based on appellee's concession will be subject to collateral attack:

> [I]t is not clear beyond all argument that appellee's subsequent commitment without the benefit of a jury adjudication of his actual culpability—or an explicit jury waiver—could not be challenged collaterally. Certainly, the implications arising from appellee's actions were not explained to him before he made the motion for a directed verdict [and entered his "partial plea"] as the courts have required in other similar situations, as when a defendant simply waives his right to a jury trial. . . . [Appellant's Brief at 17.]

In my view the majority errs in finding a guilty plea here which would obviate. the need for a full retrial.

In any event, however, it is clear that the majority permits the government to present its witnesses all over again to a new jury in an effort to convict appellee and impose a penal sanction upon him. Whatever label the majority may attach to this proceeding, and however limited may be the issues to be resolved, it is in fact a retrial and hence barred by the Double Jeopardy Clause.

For these reasons I would dismiss the government's appeal in Appeal No. 10113.[1]

---

1. I agree with the court's affirmance in Appeal No. 10289.